UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD R. SANDERS JR.,

    Plaintiff,

-against-

DEMOCRATS; REPUBLICAN; BARACK OBAMA; SUE KAPLAN; JUSTICE SYSTEM; ARTHUR PARK; LINDA HALLAK; IRIE PUSHIA; HUNTER'S POINT ADULT DAY CARE CENTER BAYVIEW; HIGHWAY 175 MINI WAREHOUSE; McKEEGAN LAW P.C.,

    Defendants.

18-CV-9519 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his rights. By order dated March 28, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. The Court dismisses the complaint for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). While the law mandates dismissal on any of these grounds, the Court is obliged to construe pro se pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted).

**BACKGROUND**

Plaintiff's complaint is not a model of clarity. He brings this action against "Democrats," "Republican," former President Barack Obama, the justice system, a storage warehouse, and entities and individuals involved in his deceased mother's care and estate. Plaintiff interweaves various events from his life that occurred at different times in Africa, California, Arizona, Texas, and New York. He asserts that because of the color of his skin, his rights were violated in connection with his mother's care, he was denied medical treatment at a veteran's hospital, and his property was stolen at a storage warehouse. (ECF No. 2 at 2, 5.)[1] Plaintiff reflects on his and his dog's lives after returning from Africa, court proceedings involving the conservatorship of his mentally ill mother's person and estate, and his efforts to return to Africa. But Plaintiff presents the facts in such a nonlinear manner that it is difficult for the Court to understand the events from which his claims arise and what legal claims he is attempting to asserts.

---

[1] Citations to the complaint and attached documents refer to the pagination generated by the Court's electronic case filing system (ECF).

The following facts are taken from the complaint and attached documents:[2] Plaintiff and his dog served in Africa, where they were registered with Interpol. In Africa, the dog saved Plaintiff's life, Plaintiff was made a tribal leader, and Hillary Clinton "called [him] [a] political leader or she was talking about someone else." (*Id*. at 16.) In Uganda, Plaintiff was informed that if he did not go back to America, unspecified sanctions would not be lifted. Plaintiff was eventually forced out of Africa by the American Government. While Plaintiff was in Africa, he placed his equipment in a storage unit in Texas, which he rented for $35.00 a month. But years later, the storage warehouse cut off all communications with Plaintiff and he lost his equipment.

After Plaintiff was forced out of Africa, he and his dog ended up in Beaumont, Texas, where Plaintiff's grandfather lived. There, Plaintiff boarded the dog and lived at a shelter while attempting to get a job. Plaintiff took on jobs that no one else wanted and started saving money to buy a van.

Plaintiff and his dog later became homeless in Beaumont. One day, he "spotted a foreigner," introduced himself, and struck a bargain with the foreigner to work as a handyman in exchange for shelter. (*Id*. at 17.) But Plaintiff got into an altercation with the foreigner and eventually moved to Dallas, Texas, where he attempted to go to a veteran's hospital for treatment.

Throughout the complaint, Plaintiff refers to court proceedings involving the conservatorship of his mother's person and estate. He also attaches to the complaint court papers and other documents that reveal that Plaintiff's mother was mentally ill and had been subjected to a conservatorship of her person and estate since 1992, with Plaintiff's grandmother as the

---

[2] In this summary, the Court has attempted to take the interspersed facts from Plaintiff's complaint and group what appear to be similar events together. The Court relies largely on the attached documents for dates and supporting facts.

conservator. Following the death of Plaintiff's grandmother in 2009, Linda Hallak, his mother's cousin, was appointed as successor conservator. But Hallak and her sister, Irie Pushia, then became involved in a dispute regarding monies left by Plaintiff's grandmother for the care of Plaintiff's mother. Plaintiff hired an attorney in Montgomery, Texas, to represent him in court proceedings concerning his mother. At an unspecified date, he went to his attorney's office, and the attorney informed him that his mother's condition had worsened, that there was no need for Plaintiff to see her, and offered to return $100.00 to Plaintiff, but the attorney never returned the money. Shortly after his mother's death, "the two black sister[s]" – presumably Hallak and Pushia – "ganged up on [Plaintiff]" in order to obtain his mother's money. (*Id*. at 9.) Arthur Park, his mother's attorney, offered "to give [Plaintiff] some of the stolen money," but Plaintiff would have "no part in evil doing." (*Id*.) Plaintiff, who was living in Tucson, Arizona, at the time, took himself and his dog back to Arizona.

Plaintiff also relates his efforts to return to Africa. In 2012, Plaintiff paid for a flight to Egypt on Delta Airlines. He enrolled the dog with Pet Smart to get a health certificate, and he attempted to get a physical at a veteran's hospital, but was denied treatment. Plaintiff also had problems getting the health certificate from Pet Smart for the dog, but he eventually got the paperwork. When Plaintiff and the dog arrived at the airport in Tucson, Arizona, they were not allowed to fly – an airline employee mentioned something about former President Obama – and they had to spend the night at the airport. During this time, Plaintiff believes that his cell phone "was being tapped and spied." (*Id*. at 11.)

The next morning, an airport official told Plaintiff that he and the dog could not stay at the airport. They returned to the veteran's hospital, where staff members wanted Plaintiff "to see a psychiatrist for what the Obama administration is [d]oing to a man that is living accordingly to

4

the ways of God." (*Id*. at 11.) Plaintiff and the dog left the hospital and ended up sleeping in the fields and eating in soup kitchens for two weeks. They then returned to the airport and were able to fly to New York.

At JFK in New York, Plaintiff learned that he needed a visa to fly to Egypt. After taking a taxi to a nearby storage place in Queens, he and the dog ended up sleeping in the streets and under bridges, and eventually on the side of the storage place. Several weeks later, the storage place built a fence to keep Plaintiff out. Plaintiff then moved to a basement apartment in a building, where he again traded handyman work for shelter. But Plaintiff later had a disagreement with the landlord and the police were called. The police informed Plaintiff that it was illegal to stay in the basement apartment, and later that night, a SWAT team invaded the apartment, tied Plaintiff and the dog up, and arrested Plaintiff. The Court later directed Plaintiff to take anger management classes for six weeks and pay a fine.

Plaintiff continues in his efforts to return to Africa. But he indicates that he had problems getting Africa-related paperwork and attributes his difficulties to his race and an unspecified policy that was in place during the Clinton and Bush Presidencies and continued during President Obama's time in office and Hillary Clinton's tenure as Secretary of State.

Plaintiff provides the following statement for relief:

> $100 billion for me my son's that need relief from hatred of drug Just by me beginning Black is enough evidence to show that this need to be in the world court but we can bring This people to court here. For a start and I do not know if she is alive today but a man Like me is no facebook and Twitter and they treat me like me like a terrorist but I have done more Than the ambassador of the United Nations to bringing about peace to the Middle East And they get paid millions of dollars. This is why I refuse to take the {$5,000} that was Awarded me. The judge seeing that the evidence was clear but I could feel that it is much bigger than that. Those people are not hard to find I have done some investigating, And what I have learned that it is racism and the Constitution has been broken after slave.

(*Id*. at 6.)

## DISCUSSION

Even when read with the "special solicitude" due *pro se* pleadings, *Triestman*, 470 F.3d at 474-75, Plaintiff's claims rise to the level of the irrational, and there is no legal theory on which he can rely. *See Denton*, 504 U.S. at 33; *Livingston*, 141 F.3d at 437.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's complaint is dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). The Clerk of Court is directed to terminate all other pending matters.

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: April 12, 2019
New York, New York

COLLEEN McMAHON
Chief United States District Judge